IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE RICHARDS,<br>      *Petitioner,* | : | CIVIL ACTION |
| | : | |
| | : | |
|       v. | : | |
| | : | NO. 13-7109 |
| BRIAN COLEMAN, et al., | : | |
|       *Respondents.* | : | |

FILED

NOV ⌐ 6 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**MEMORANDUM**

PRATTER, J.                                                            NOVEMBER 3, 2015

**I.      INTRODUCTION**

Andre Richards, an inmate currently incarcerated in the Pennsylvania State Correctional

Institution Fayette in La Belle, Pennsylvania, seeks federal *habeas* relief under 28 U.S.C. § 2254.

His petition is meritorious and will be granted because the evidence presented at this bench trial

was insufficient to support a finding that he constructively possessed the firearm at issue.

In June 2005, Mr. Richards was a passenger in a vehicle that was stopped by the local

police for a traffic violation while traveling through South Philadelphia. A search of the vehicle,

conducted during the stop, uncovered a handgun under the driver's seat.  Mr. Richards was

arrested and subsequently convicted of the unlawful possession of a weapon.  After exhausting

his state remedies, a Petition for Writ of *Habeas Corpus* was filed in this Court in December

2013.  (Doc. No. 1).  On April 3, 2014, this Court ordered the matter be referred to Magistrate

Judge Linda K. Caracappa for a Report and Recommendation, (Doc. No. 4), and Magistrate

Judge Caracappa ultimately recommended that Mr. Richards's petition be denied with prejudice.

For the reasons outlined below, the Court declines to adopt Judge Caracappa's Report

and Recommendation as to Mr. Richards's first and second claims.  The Court will grant Mr.

1

Richards's petition on the basis of his first claim that the evidence presented at trial was insufficient to find beyond a reasonable doubt that he was in constructive possession of the handgun at issue. The Court will deny Mr. Richards's second claim, for the reasons identified below. Finally, the Court will adopt Judge Caracappa's analysis and recommendation as to Mr. Richards's third and fourth claims.

## II.      FACTUAL BACKGROUND

The factual circumstances of Mr. Richards's arrest were summarized by the trial court as follows:

> On June 24, 2005, at approximately 7:20 p.m., Officer Paul Ingram was on patrol in a marked patrol car when he observed a 1994 black Chevy Caprice on the 400 block of Christian Street traveling northbound on 5th Street in the city and county of Philadelphia. Officer Ingram activated his emergency lights and sirens and proceeded to stop the vehicle for having heavily tinted windows, which is a traffic violation. The vehicle immediately pulled over. Once the vehicle pulled over, Officer Ingram and Officer Mark Mazzoni approached the vehicle. Officer Ingram approached the driver's side. Officer Mazzoni approached the passenger side of the vehicle. Officer Ingram directed the driver to roll down his window. Upon doing so, Officer Ingram stated that he could smell an odor of marijuana coming from the vehicle. Officer Ingram asked all four male occupants of the vehicle if they had any drugs in the car. At which point, the front passenger produced several vials of marijuana. [Petitioner] was seated in the rear of the driver at the time of the incident.
>
> After the front passenger produced the vials of marijuana, Officer Mazzoni asked him to step out of the vehicle and arrested him. Officer Ingram then asked the driver to step out of the vehicle. Upon doing so, Officer Ingram did a cursory look under the driver's seat and saw a black semi-automatic handgun towards the rear of the driver's seat, approximately 10 inches away from the [Petitioner]. The gun was loaded with six live rounds of [sic] the magazine and one in the chamber. He secured the weapon and placed in on [sic] Property Receipt No. 2574186. He then arrested [Petitioner]. [Petitioner] did not have a license to carry a firearm.

Trial Court Opinion, *Commonwealth v. Richards*, No. 3034 EDA 2007, CP-51-CR-0502041-2006, at *1-2 (Pa. Ct. Com. Pl. May 2, 2008). (Hereinafter "Trial Court Opinion at __")

Mr. Richards was tried before the Honorable George W. Overton on March 15, 2007 in the Common Pleas Court of Philadelphia. Immediately before his trial began, Mr. Richards

challenged the admission of the handgun on the basis that it was uncovered during an illegal search of the vehicle. A hearing was conducted on the motion *in limine*, during which Officer Ingram testified as to the circumstances of the stop. He was the only witness to testify at this hearing and his direct and cross examination covered only 15 transcript pages. *See* Motion to Suppress & Waiver Trial Transcript, *Commonwealth v. Andre Richards*, 51-CR-0502041-2006, at 6-20 (Pa. Ct. Com. Pl March 15, 2007) (hereafter "3/15/07 Tr. at __.")

Following this hearing, the Court ruled from the bench that the search was legal and that the gun was admissible. *See* 3/15/07 Tr. at 28. The court then moved immediately onto trial. The transcript of the entire trial covers just 28 pages. 3/15/07 Tr. at 29-57. Of this, eight pages are taken up by the trial court's colloquy with the defendant regarding his desire to waive his right to a jury trial. 3/15/07 Tr. at 29-36. Then the government recalled Officer Ingram, who provided further testimony as to the type of gun uncovered, its location in the car, and chain of custody following its seizure. 3/15/07 Tr. at 37-41. He was the only witness to testify at trial. Defense counsel put on no evidence contradicting the Government's account of the incident. Following Officer Ingram's testimony, both sides rested.

The Petitioner was convicted of violations of the Uniform Firearms Act, 18 Pa. C.S.A. §§ 6105, 6106 and 6108, for carrying a firearm as a convicted felon, carrying a firearm without a license and carrying a firearm on public streets or public property in Philadelphia. Trial Court Opinion at 1. On November 15, 2007, the trial court sentenced Mr. Richards to 54 months to 108 months incarceration for violation of § 6105 and 42 to 83 months incarceration for violation of § 6106, sentences to run concurrently. *See* Motion to Reconsider & Sentencing Transcript, *Commonwealth v. Richards*, 51-CR-0502041-2006, at 13:6-18 (Pa. Ct. Com. Pl November 15,

2007) (hereafter "11/15/07 Tr. at. ___"). The court imposed no additional penalty for the violation of § 6108. *Id.*

Mr. Richards filed a direct appeal to the Pennsylvania Superior Court where he raised three arguments: (1) the trial court erred by denying his pretrial motion to suppress the handgun found in the course of the search of the vehicle because the police lacked probable cause or reasonable suspicion to search the vehicle; (2) the evidence presented at trial was insufficient to convict the Petitioner; and (3) the sentence imposed was an abuse of discretion by the trial court. Opinion on Appeal, *Commonwealth v. Richards,* No. 3034 EDA 2007, 51-CR-0502041-2006, Slip op. at *3 (Pa. Super. March 30, 2009) (hereinafter "Appellate Opinion at ___."). The Superior Court affirmed the trial court's judgment. *Id.* In March 2010, the Pennsylvania Supreme Court denied the Petitioner's appeal. *Commonwealth v. Richards*, 605 Pa. 699, 990 A.2d 729 (Pa. 2010).

On April 21, 2010, Mr. Richards filed a *pro se* petition under the Pennsylvania Post-Conviction Relief Act (PCRA), 42 Pa. C.S. § 9541, *et seq*. On December 14, 2010, counsel was appointed and afterwards filed an amended petition on March 23, 2011. On October 21, 2011, the PCRA Court denied and dismissed the PCRA petition. *Commonwealth v. Richards,* No. 3001 EDA 2011, CP-51-CR-0502041-2006, Slip op. (Pa. Ct. Com. Pl March 1, 2012). On April 1, 2013, the Superior Court affirmed the lower court's dismissal. *Commonwealth v. Richards*, 75 A.3d 539 (Pa. Super. Ct. 2013). On October 16, 2013, the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal. *Commonwealth v. Richards*, 621 Pa. 695, 77 A.3d 1260 (Pa. 2013)

Mr. Richards filed the instant petition seeking *habeas corpus* relief on December 15, 2013. In his petition, he argued his conviction should be overturned for four reasons:

4

1. The evidence was insufficient to support the convictions and/or against the weight of the evidence; . . .
2. Ineffective assistance of counsel and/or trial court erred in denying petitioner the right to file a post-sentence motion *nunc pro tunc*; . . .
3. The sentence is illegal, in that it is excessive, does not reflect the character, history and condition of petitioner and there is "no" factual basis on record for the sentence, or the trial court erred in not granting PCRA relief based on same; . . .
4. The trial court erred in denying motion to suppress.

(Doc. No. 1 at 6-11).

## III.   STANDARD OF REVIEW

The standards set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, govern this Court's review of petitions for *habeas corpus* by persons in state custody. A petitioner is obligated under AEDPA to exhaust any post-conviction remedies available in the state courts prior to seeking *habeas* relief in federal court. Section 2254(b)(1). Once the petitioner has exhausted his remedies and is properly before the district court AEDPA requires the district court to extend significant deference to the findings of the state courts:

> An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d).

The Supreme Court defined the AEDPA standard in *Williams v. Taylor*, 529 U.S. 362, 405-07 (2000). The Court explained that the "contrary to" and "unreasonable application of" clauses in § 2254(d)(1) involve separate analyses. An application of federal law can be contrary to Supreme Court precedent in two general ways: either "the state court arrives at a conclusion

opposite to that reached by [the] Court on a question of law," or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]". *Id.* at 405. The Supreme Court explains how a state court can unreasonably apply federal law: an application of the Supreme Court's precedent is unreasonable where "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or the "state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Therefore, a court may not issue a writ simply because it finds that the state court applied clearly established federal law erroneously or incorrectly; the application must be "objectively unreasonable" such that the state court's decision cannot be reconciled with any reasonable application of the controlling standard. *Garrus v. Sec'y of Pennsylvania Dep't of Corr.*, 694 F.3d 394, 404 (3d Cir. 2012) (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).

While Congress has imposed a high procedural bar for incarcerated individuals seeking *habeas* relief, *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015), extending deference does not require this Court to rubber stamp the findings of the state courts. "Even in the context of federal *habeas*, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV.    DISCUSSION

In his petition, Mr. Richards points to four separate errors by the state courts and argues that each constitutes a basis on which to grant him relief. The Court must analyze each of these alleged errors to determine whether the decision of the state court was "contrary to," or

6

constituted an unreasonable application of "clearly established federal law." *Williams*, 529 U.S. at 404.

    Claim One: Sufficiency of the Evidence

    The Petitioner's first claim is that the trial court violated his rights under the Fourteenth Amendment when it convicted him of unlawful possession of a firearm based on insufficient evidence. (Doc. No. 1 at 8). This claim was raised on both direct appeal and PCRA review in the state courts. *See* Appellate Opinion at 3; *Richards*, 3001 EDA 2011, Slip op. *2. For the reasons outlined below, the Court finds that this claim has merit, entitling Mr. Richards to relief.

    The Supreme Court has held due process mandates that a person can only be convicted of a crime after every element of the offense has been proven beyond a reasonable doubt. *Jackson v. Virginia*, 433 U.S. 307, 316 (1979); *Robertson v. Klem*, 580 F.3d 159, 165 (3d Cir. 2009); *Kamienski v. Hendricks*, 332 F. App'x. 740, 740-41 (3d Cir 2009). "The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation." *In re Winship*, 397 U.S. 358, 361 (1970). This requirement is vital to our system of criminal procedure as it is "the prime instrument for reducing the risk of convictions resting on factual error." *Id.* at 363; *see Robertson*, 580 F.3d at 165. Moreover, "[i]t is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." *Winship*, 397 U.S. at 364; *see Robertson*, 580 F.3d at 165.

    The Supreme Court has emphasized the substantial importance the reasonable doubt standard plays in the context of criminal procedure, but also explained that the responsibility to fairly resolve conflicts in testimony, weigh the evidence and draw reasonable inferences from basic facts to ultimate facts rests not with the appellate courts but with the finder of fact.

*Sullivan v. Cuyler*, 723 F.2d 1077, 1083-84 (3d Cir. 1983); *see Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012). Consequently, this Court must only determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan,* 723 F.2d at 1084 (citing *Jackson*, 443 U.S. at 319) (emphasis in original). A reviewing court may only overturn the conviction "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013) (citing *Jackson*, 442 U.S. at 324). This review must be made "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *Robertson*, 580 F.3d at 165; *Organ v. Vaughn*, 123 F.3d 727, 731-32 (3d Cir. 1997) (applying *Jackson* standard to sufficiency of the evidence claim for state conviction for aggravated assault), *cert denied* 422 U.S. 1059 (1998). Ultimately, a federal court can only grant a state prisoner's petition where the state court's decision finding proof beyond a reasonable doubt was objectively unreasonable. *See Williams*, 529 U.S. at 407-08. The Court so concludes here.

At the time of his arrest, the handgun in question was not found on Mr. Richards's person. Rather it was found under the driver's seat, some ten inches from where Mr. Richards's feet, as the rear seat passenger, would have been. Therefore, his conviction was based upon constructive, rather than actual, possession of the handgun. Under Pennsylvania law, "[i]n order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013), reargument denied (May 2, 2013), appeal denied, 621 Pa. 687, 77 A.3d 636 (2013)

(citing *Commonwealth v. Gutierrez*, 969 A.2d 584, 590 (Pa. Super. 2009); *accord Commonwealth v. Thompson*, 799 A.2d 1195, 1199 (Pa. Super. 2001); *Commonwealth v. Carter*, 450 A.2d 142, 144 (Pa. Super. 1982). These elements may be established from the totality of the circumstances, and the fact finder is permitted to point to any number of considerations relevant to its analysis. *Harvard,* 64 A.3d at 699. For example, one's presence in an automobile where contraband is found or one's proximity to the contraband are both circumstances relevant to the fact finder's analysis. However, one's "mere presence in an automobile in which a weapon is found . . . is not sufficient to prove that a passenger is in possession of the weapon," *Carter*, 450 A.2d at 144. This is merely a factor to be considered in the totality of circumstances that can be used, if it is reasonable to do so, to find knowledge of the presence of the contraband, which is essential to a finding of intention to exercise control. *Id; Commonwealth v. Harris*, 397 A.2d 424, 429 (Pa. Super. 1979).

Based upon a review of the record and considering the evidence in a light most favorable to the prosecution, the Court concludes nonetheless that no rational tier of fact could reasonably find the evidence presented at Mr. Richards's trial established beyond a reasonable doubt his intent to constructively possess the handgun in question. The record evidence only establishes that he was found in close proximity to the gun. The gun was completely under the driver's seat, "10 inches or so[,] 10, 15 inches, not very far" from the defendant's feet. 3/15/07 Tr. at 38:11-21, 47. Testimony was also presented, however, establishing that the gun would have been approximately 6 inches away from *the driver's* feet. 3/15/07 Tr. at 46:25-47:6. There was no testimony about the amount of room under the seat for movement or access, nor about any other refuse, obstacles, mechanical features or the like between the bottom of the seat and the car floor. The handgun was discovered by one of the arresting officers, who was looking under the driver's

9

seat from the position of the driver's foot well looking towards the back of the car. 3/15/07 Tr. at 38:6-21.   No evidence was presented to indicate that Mr. Richards owned or otherwise controlled the car.   Likewise, there was no evidence that at any time prior to the search the handgun was within the defendant's field of vision or actual reach. 3/15/07 Tr. at 19:16-19.   In fact, the arresting officer testified that he did not see the defendant make any movements in the direction of the gun prior to the arrest. 3/15/07 Tr. at 15:22-16:11.   He also testified that prior to walking up to the car and asking the occupants to roll down the windows, the officer was unable to see any movement in the car by any of the passengers due to the window tint. 3/15/07 Tr. at 15:22-16:3.

Taken in the light most favorable to the government, this evidence can establish nothing more than that Mr. Richards may have had the *ability* to control the firearm in question.   As to intent, the second element of constructive possession, this could not be inferred absent the kind of guesswork that due process prohibits. *See Kamienski*, 332 F. App'x. at 750.   Simply put, there was no evidence from which a rational trier of fact could deduce that Mr. Richards intended to exercise control or dominion over the handgun.   To reiterate, Mr. Richards did not own the vehicle.   Despite the evidence at trial that Mr. Richards had greater access to the gun than the other occupants, the record did not establish that he had exclusive control. *C.f. Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996) ("The fact that the contraband is located in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its presence.").   Nor did the record establish that he could so much as even see the gun from where he was sitting. [1]   There was no evidence presented that he made any movements, gestures

---

[1] The respondent in his papers takes issue with Mr. Richards's argument that the gun was not in his "plain view" at the time of the arrest on the basis that "plain view" is a doctrine relevant for analyzing the reasonableness of Fourth Amendment searches and has no applicability to the *habeas* review. *See* Doc. No. 12 at 8, n.5.   While the Court addresses the Petitioner's Fourth Amendment arguments *infra,* the location of the handgun out of Mr.

or comments to indicate he was aware of the gun, much less that he entertained any intentions regarding it. *C.f. Thompson*, 779 A.2d at 1199 (noting that "considerably more evidence" than defendant's mere presence in the car was required to convict him of constructive possession); *Com. v. Carter*, 450 A.2d 142, 144 (Pa. Super. 1982) (finding the handgun was in "clear view" of the defendant, none of the other occupants had the opportunity to place the gun on floor, and the defendant's movements bending down towards the gun indicated his intention to control it); *Harris*, 397 A.2d at 430 (finding the defendant possessed intent to control drugs found in his bedroom upon his possession of drug paraphernalia and his fingerprints on the drug packaging).

Despite the anemic record, the trial court (sitting without a jury and just having ruled in favor of the government on a suppression motion) convicted Mr. Richards. An examination of the trial count opinion, however, shows that that court's own analysis of the record did not determine that each element of the offense had been established beyond a reasonable doubt.

Following sentencing, Mr. Richards sought to appeal from his conviction. As per Pennsylvania Rule of Appellate Procedure 1925(a), the state court trial judge issued a brief opinion describing the reasons for his sentencing order. The court first explained that given the location of the gun when found, a conviction, if entered, must be based on constructive possession. The court then cited to Pennsylvania law establishing the two elements of constructive possession. Trial Court Opinion at 8. The judge then goes on to describe his analysis and holding on the constructive possession charge:

> Here, there was evidence beyond a reasonable doubt that the Appellant was in constructive possession of the firearm. *See, Commonwealth v. Boatwright*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). The Appellant was the passenger in the rear driver's side of the vehicle and the black semi-automatic handgun was located approximately 10 inches away from Appellant's feet when it was recovered from the floor of the vehicle. The firearm was recovered from

---

Richards's plain view—in the colloquial sense—is relevant to the fact finders' determination of his knowledge of, and intentions regarding, the handgun.

underneath the driver's seat in the rear and it was obvious that the Appellant *could have exercised* dominion and control over [the weapon] *if he so intended. Id.* Thus based upon the totality of the circumstances, the court was persuaded beyond a reasonable doubt that the Appellant possessed the firearm.

Trial Court Opinion at 5 (emphasis added).

This passage demonstrates why Mr. Richards's conviction was not simply incorrect, but was objectively unreasonable. First, despite acknowledging that intent is an essential element that must be established beyond a reasonable doubt, the trial court's opinion fails to even attempt to identify any evidence which did or could show intent. *Id.* Then, having failed to identify any supporting evidence, the court lays out an analysis justifying its finding that the elements of constructive intent have been established which is based exclusively on an analysis of the first element. *Id.* The trial court's opinion did not state that the record established beyond a reasonable doubt that the Petitioner *did in fact* intend to exercise dominion over the gun, as is required in order to convict Mr. Richards under Pennsylvania law. This requirement had been recognized by the Sentencing judge earlier in his opinion. The Common Pleas judge only detailed the evidence that established that Mr. Richards *could have* possessed (as opposed to "*did*" possess) the requisite intent. Consequently, Mr. Richards's conviction rests, not on inference, but on speculation. *See Kamienski,* 332 F. App'x. at 750. The failure to find each of the elements necessary to convict Mr. Richards constitutes an unreasonable application of clearly established federal law. *In re Winship*, 397 U.S. at 364; *Robertson*, 480 F.3d at 167.

Following his sentencing and the subsequent issuance of the court's opinion, Mr. Richards appealed to the Pennsylvania Superior Court. He argued that "there was no evidence presented to show that [he] had knowledge of the presence of the weapon or that he ever observed the weapon under the driver's seat." Appellate Opinion at 6. The Superior Court affirmed Mr. Richards's conviction 2-1. *Id.* The majority held that the evidence, "when viewed

12

in a light favorable to the Commonwealth, support[ed] the fact-finder's conclusion that Appellant had the intent and the ability to control the gun." *Id.* at 9-10. The Superior Court did not address the inconsistency between the standard employed and the language in the trial court's opinion indicating it failed to find both elements of constructive possession. Additionally, as with the lower court's holding, the majority's analysis did not identify any evidence from which a rational trier of fact could deduce the existence of both elements of constructive possession. The only evidence cited by the majority relates solely to the proximity of the firearm in relation to the Petitioner. The majority states that "the trial court found that Appellant's physical position in relationship to the gun, along with other circumstantial evidence, established constructive possession of the gun." *Id.* at 9. The majority does not indicate what that circumstantial evidence was and ultimately concludes that the elements of constructive possession were satisfied "based on the location of the weapon and its proximity to Appellant's person." *Id.* at 9. A review of the trial court's opinion, and the record itself, provides no insight into what the circumstantial evidence proving intent could be. The majority opinion leaves it to the reader to speculate on what circumstantial evidence they are referencing.[2] This Court, having reviewed the record, has found no such evidence.

The implication of the Superior Court's analysis is that evidence of proximity can constitute the *sole* circumstantial evidence necessary to find intent. This is objectively unreasonable because it has the effect of collapsing a two part test and thereby avoids finding proof beyond a reasonable doubt as to each element of an offense. As the Superior Court's own

---

[2] Judge Popovich filed a dissenting opinion in which he disagreed with the majority's analysis on the sufficiency of the evidence. He found that the conviction was based "wholly on suspicion and conjecture" and that based upon the record, the evidence did not support a finding that the Petitioner was aware of the existence of the firearm, let along possessed the intent to exercise control over it. *Commonwealth v. Richards*, No. 3034 EDA 2007, Slip op. at *2 (Pa. Super. March 30, 2009) (Popovich J. Dissenting). He found that the only evidence presented by the Commonwealth at trial related to the location of the firearm in question and correctly pointed out that "a defendant's proximity to the contraband viewed alone does not, *ipso facto*, prove his knowledge of its existence or his intent to exercise control over it." *Id.* at 2.

recitation of the constructive possession standard acknowledges, the government must establish two distinct elements so it would be objectively unreasonable for the court to base its holding on the establishment of just one. *Id.* at *8; *see Jackson*, 443 U.S. at 323-24; *Robertson,* 580 F.3d at 166. Given that the proximity evidence is also used to prove the ability element of constructive possession, the Superior Court has effectively nullified the need to independently establish and consider beyond a reasonable doubt the intent element as distinct from the control element. This cannot be so—simply being near an object does not create any inference as to one's intent to control it. Moreover, that proximity may constitute circumstantial evidence of a defendant's knowledge of the contraband at issue does not imply that proximity alone can constitute circumstantial evidence of intent. Appellate Opinion at 8 (citing *Harris*, 397 A.2d at 429). In fact, the implication is just the opposite: knowledge alone is something less than intent so evidence of proximity must be tied with something more.

The Third Circuit Court of Appeal's decision in *Robertson v. Klem* is instructive. After acquitting the defendant of the murders of two drug dealers, the jury nevertheless convicted him of two separate conspiracies to commit these murders. The defendant challenged this conviction, arguing that the evidence could, at most, establish a single conspiracy. 580 F.3d at 166. After the district court denied his *habeas* petition, the Third Circuit reversed, finding instead that no reasonable juror could have found two separate conspiracies existed. *Id.* The factual record only established that the defendant and a second individual participated in the alleged conspiracies and that the victims were both killed at the same time and in the same place and using the same weapon. The inference that these murders were the product of multiple conspiracies was based solely on the existence of two victims. Under Pennsylvania's conspiracy statute, however, a single conspiracy may involve commission of multiple crimes, so long as these crimes are "the

object of the same agreement or continuous conspiratorial relationship." *Id.* at 167 (citing 18 Pa. Cons. Stat. Ann. § 903(c)). The Third Circuit held that the state court's inference regarding the existence of multiple conspiracies was not justified based upon the facts presented at trial and therefore, all the elements of each conspiracy were not established beyond a reasonable doubt.

The respondent's papers here fail to provide any authority or argument which contradicts the Court's analysis of Mr. Richards's arguments. The respondent argues that the evidence establishing the position of the firearm, under the driver's seat in front of where the defendant himself was seated, is sufficient to establish constructive possession. (Doc. No. 12 at 9). Rather, the recitation of the sparse factual justification offered by the state courts in support of upholding the conviction only further confirms this Court's belief that no factual predicate was established at trial from which the fact-finder could infer Mr. Richards's intent to possess the gun.

Additionally, the respondent's reliance on *Coleman v. Johnson*, 132 S. Ct. 2060 (2012), is unavailing. In that case, the Supreme Court reversed the Third Circuit Court of Appeals, which had granted a *habeas* petition on the basis of insufficient evidence. *Id.* at 2064. The Supreme Court found that the Court of Appeals' holding was based upon that Court's choice between permissible inferences drawn from the record. *Id.* at 2065. However, under *Jackson v. Virginia* and AEDPA, the federal courts are not permitted to engage in such inquiry. While the *Coleman* opinion sets out the stringent standard and substantial deference the federal courts must apply when analyzing a state prisoner's petition for *habeas* relief, nothing in the *Coleman* analysis conflicts with this Court's findings here. The Supreme Court's holding in *Coleman* was based upon a factual record from which the jury could draw competing inferences. The Third Circuit Court of Appeals had inappropriately parsed facts and drawn inferences as to their significance which were different from the inferences drawn by the jury. *Id.* at 2064 ("This

deferential standard does not permit the type of fine-grained factual parsing in which the Court of Appeals engaged."). This is what the Supreme Court found to be improper. Conversely, here, the decision is based not on competing inferences, but rather on the total lack of cognizable evidence from which any reasonable fact-finder could draw an inference as to the existence of an element essential to the Petitioner's conviction.

This Court finds, therefore, that the state courts have failed to comply with the requirements of due process. Mr. Richards's conviction, in light of the fact that not all the elements of constructive possession were proven beyond a reasonable doubt, constitutes an unreasonable application of federal law. *See Robertson*, 580 F.3d at 166-67: *Kamienski,* 332 F. App'x. 750; *see also In re Winship,* 397 U.S. at 368; *U.S. v. Zavala*, 190 F. App'x. 131, 135 (3d Cir. 2006) (finding that evidence supporting defendant's knowledge of participation in illicit activities did not support an inference that he was aware that he was involved in a drug transaction).

Again, the only evidence identified by the state courts here relates to the location of the firearm in question. Appellate Opinion at 9; Trial Court Opinion at 5. There is no additional circumstantial evidence identified by either court that tends to show the defendant was aware of the gun, let alone intended to control it. Appellate Opinion at 9. Even under the deferential AEDPA standard, this Court cannot, and will not, allow speculation to substitute for proof beyond a reasonable doubt. *Kamienski,* 332 F. App'x. at 749. For this reason, the Court will grant the Petitioner's motion.

Claim Two: Ineffective Assistance of Counsel

The Petitioner's second claim is that his trial counsel was ineffective for failing to preserve certain issues for appeal. The Court adopts the recommendation of Magistrate Judge

Caracappa to deny Petitioner's second claim but, given the reasoning outlined above, for somewhat different reasons than were outlined in the Magistrate's Report and Recommendation.

Petitioner argues that trial counsel's performance was deficient in two respects. First, counsel should have filed a post-sentence motion seeking to retroactively correct the earlier ruling through a motion *nunc pro tunc*. (Doc. No. 1 at 8). Second, Petitioner argues trial counsel was ineffective for failing to preserve the issue that Petitioner's sentence was harsh and excessive and that the trial judge did not adequately state on the record his reasons for the sentence. (Doc. No. 1 at 8).

The relevant federal standard here comes from *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel at trial. U.S. Const., Amend. VI. The Supreme Court in *Strickland* established a two part analysis for determining whether a defendant received effective assistance during trial: the defendant must show that (1) counsel's performance was deficient and (2) that deficient performance prejudiced the defendant. *Id.*

A petitioner must therefore first identify the acts or omissions which he or she alleges were deficient. Deficient performance is that which falls below an "objective standard of reasonableness." *Id.* at 688.

> From counsel's function as assistant to the defendant derive [sic] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

*Strickland*, 466 U.S. at 688 (citing *Powell v. Alabama*, 287 US. at 68-69). Prevailing norms, such as those found in the American Bar Association Standards for Criminal Justice, serve as guides for determining what conduct is reasonable. *Outten v. Kearney*, 464 F.3d 401, 417 (3d

Cir. 2006) (citing *Strickland,* 466 U.S. at 688). The Court notes that there is no set list of duties that counsel is required to provide and a determination of whether counsel's conduct fell short must be determined based upon a review of the relevant circumstances. *Strickland*, 466 U.S. at 688.

Second, in addition to putting forward evidence showing that the conduct of the defense counsel was deficient, the Petitioner must also show that he or she was prejudiced as a result of this deficiency. Establishing prejudice requires that the Petitioner show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 694. A conceivable probability that a different result would have occurred is insufficient to establish the required prejudice under this prong; rather a substantial showing must be made. *See Harrington,* 131 S. Ct. 792.

Here, Mr. Richards first argues that his trial counsel was ineffective for failing to file a post sentence motion *nunc pro tunc,* arguing that his conviction was against the weight of the evidence. A motion *nunc pro tunc*, or "then for now," denotes an order "having retroactive legal effect through a court's inherent power. When an order is signed '*nunc pro tunc*' it means that a thing is now done which should have been done as of an earlier date." *Hall v. Unemployment Comp. Bd. of Review*, 42 A.3d 1204, 1207 (Pa. Commw. Ct. 2012) (citations omitted). Mr. Richards claims that without this motion, trial counsel waived his right to have the Superior Court review the issue of constructive possession.

As discussed above, the Superior Court's holding on Mr. Richards's direct appeal was an objectively unreasonable application of established federal law. But the trial court entertained and ruled on Mr. Richards's motion to reconsider the verdict at the sentencing hearing. 11/5/07 Tr. at 3-8. Moreover, the Superior Court also addressed Mr. Richards's weight of the evidence

claim on direct appeal. Appellate Opinion at \*9-10. It is, therefore, not apparent in what manner his counsel's conduct was deficient or how the Petitioner believes that he was prejudiced as a result.

The Petitioner also alleges that his counsel was ineffective for failing to file a motion challenging his sentence as harsh or excessive. As the PCRA court noted, the sentence fell within the standard range of the applicable sentencing guidelines. *Commonwealth v. Richards*, 3001 EDA 2011, CP-51-CR-0502041-2006, at \*3 (Pa. Ct. Com. Pl. March 1, 2012); *see* 11/5/07 Tr. at 9. Accordingly, the underlying claim that the sentence was excessive lacks merit. Counsel cannot be deemed ineffective for failing to raise a meritless claim. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999); *Sandler v. Wynder*, No. 07-CV-03876-JF, 2008 WL 2433094, at \*17 (E.D. Pa. June 12, 2008).

### Claim Three: Illegal Sentence

Next, Mr. Richards challenges his sentence as excessive and not reflecting his character, history and condition. He argues that the state court erred in not grating PCRA relief.

On this issue, the Court adopts the Report and Recommendation and will therefore deny the Petitioner's third claim.

### Claim Four: Motion to Suppress

Finally, Mr. Richards argues that the police officers who arrested him lacked probable cause or reasonable suspicion to search the vehicle in which the Petitioner was a passenger.

Here too, the Court adopts the Report and Recommendation and will therefore deny the fourth claim.

## V.   CONCLUSION

For the reasons discussed above, Mr. Richards's Petition for Writ of *Habeas Corpus* is granted.  The Petitioner is entitled to federal *habeas corpus* relief from his Pennsylvania state court conviction requiring the Commonwealth of Pennsylvania to either release him from custody or grant him a new trial.

*    *    *

An Order consistent with this Memorandum follows.

BY THE COURT:

GENE E.K. PRATTER<br>
United States District Judge
